Finally, now we'll move to the last case on the argument calendar. That's United States v. Lopez. Let's make sure our counsel's there. I see Mr. Culp. Mr. Culp, let me see if I can hear you, or let me hear if I can hear you. Hello. Good morning, Your Honor. Can you hear me? Yes. Loud and clear. Mr. Gentile? Good morning, Your Honor. Gentile. Sorry. All right. So good. I can hear and see you as well. Mr. Culp, you've got 10 minutes for rebuttal. So the first nine minutes are yours. You may proceed. Oh, thank you. Thank you, Your Honor. And thank you for conducting this proceeding remotely. Robert Culp for appellate Francisco Lopez. For the court's information, I was not involved in the trial proceedings. As this court has held in numerous cases, and I'm quoting US v. Lorenzo right now, suspicious circumstances are not enough to sustain a conviction for conspiracy. And mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement. That is the argument I'm making distilled into that quote. That's the basis of the conviction here, and we submit it must be overturned for insufficiency. This is a case where the government failed to prove the charge of dealing in heroin specifically. No witness said Lopez dealt in heroin, extensive surveillance, and a search resulted only in a tiny amount of cocaine possessed by a codefendant. Didn't the first witness for the government lay out the factual basis for this case in terms of how to think about what was being discussed in the conversations that were ultimately recorded? And in terms of heroin in particular, the price of heroin, the amounts, the use of a buck or a buck fifty to represent significant amounts of the drug, and also reflect that other prices would pertain to other drugs. So couldn't the jury have taken that information and then just simply plugged it into the facts that emerge as a result of the recorded conversations to reach the conclusion they did, even though there was no drug seized, even though there was no recording in which the word heroin is mentioned, and all the other points that you've made? Um, Your Honor, the government's first witness was an expert. He was not involved in the case on things that you described, although the government put emphasis on his testimony. I actually think his testimony supports my client's position because my client didn't use those words that the experts said are code for heroin, things like buns and bricks and so forth. He didn't use them. And as a matter of fact, the other... RIMS was used at one point. Okay. RIMS falls in a different category, Your Honor, because that doesn't come from the expert. That's something that's specific to this case. The hall, the co-conspirator hall was an auto mechanic. And the government's expert witness did not say anything about RIMS. One of the client said that hall sometimes uses RIMS as code for, yes, for heroin, but he also said, and I quote this in my reply brief, he also said he used RIMS in other contexts too. I'm sorry to interrupt. That's for a jury. Is that for a jury to decide what the use of the word RIMS meant under those circumstances? I don't think so, Your Honor, because there's no evidence that what was being discussed here was heroin as opposed to cocaine or as opposed to something else. Can I interrupt? I mean, doesn't Abreu Baez, who doesn't deal directly with your client, but he basically says that he provided eight to 10 kilos of heroin to Larry Hall. And that's all that Hall has. He's never seen Hall with any other drug. And then Hall is dealing with Santos, who's dealing with your client. And then the intercepts and the text messages support an inference that they're talking about heroin based on the expert testimony. That's the theory, right? That's the theory, but the theory is wrong. Abreu Baez, he did testify he was a supplier of heroin to Hall, no doubt about it. He also said on one occasion he supplied cocaine. But the key here is he didn't purport to testify, and I don't know how he could, that he knew as a fact that the only thing Hall sold was heroin. He never said that. And in fact, the government's case agent, and the references are in my reply brief in particular, government's case agent admitted that both Hall and Santos, the only two people my client dealt were also dealing in cocaine. So Abreu Baez does not, you can't look at his testimony and say, okay, if Hall's selling something, it has to be heroin. But the prices, right? Six two coincides with what the expert said was the price per gram of heroin, right? Roughly the price per gram of heroin. There's a reference from Santos to Hall. Now my client is on this conversation where Santos says that the house price or words that affect are six two, and the government argued, well, it's experts said that heroin's going for between 50 and 60 a gram. Therefore, six two must have been a price of heroin. I think that is a very, and too thin to premise a felony conviction upon. There are other numbers thrown about in these conversations. They're in my reply brief in a footnote. There's a reference to 28 pesos and the $10 and so forth. And I'm sure these are likely to be codes, but, and those are in reference to RIMS too. So I don't know how, if RIMS is heroin, why is he saying six two on one occasion, 28 on another, 10 on another? I think the jury was forced to guess here, not to conclude or to draw reasonable inferences, but to guess that is what I'm saying in a nutshell. But thank you for the question. My time is almost up anyway. If I could go to the buyer seller exception and just make one point. The point is, I think the judge, your honors know this, but the buyer exception, the buyer seller exception principle is a multi-factor analysis. And the point I want to make is that no one of those things is dispositive. So even if there's an amount here and the allegation is that it's a buck 25, which is concluded to be 125 grams or 150, I believe, that even though that is very unlikely to be for personal use, there's no decision of this court that says that even if the amount goes beyond what could possibly be for personal use, that therefore the buyer seller exception does not apply. You're not suggesting though that the jury was improperly instructed on the buyer seller exception, are you? No, you're not. We're only arguing, my client's almost out of prison now, we're only arguing sufficiency issues and I don't think there was even apart from that, your honor, I don't think that the jury was improperly instructed. I'm just arguing the sufficiency point. Right. I meant more, I'm sorry. I didn't mean when I said you're not arguing and I don't mean as a sort of a formal argument, but I guess if you accept that the jury was properly instructed on this exception, given the different inferences that can be drawn from the evidence, I guess I'm struggling with why it is you feel that that hasn't been, that it applies or the prosecution hasn't shown that it doesn't apply or what have you. It parallels the same arguments I was making earlier, your honor, with respect to sufficiency in general. It's that I don't believe a reasonable jury was given enough information to conclude that the buyer seller exception does not apply. That you've got a case here where you've basically got two transactions, alleged transactions in one month over a one year plus conspiracy and that's all they've got. They've got no connection to these 28 other co-defendants, 26 I should say. They've got no evidence of involvement with anyone else or any other even suggestion of. They did, there is some suggestion of people, other people being involved. There was a conversation between Santos and Hall in which Santos wanted to give priority to your client as opposed to somebody else who wanted the drugs. It appears that the people who were buying from Hall were multiple buyers, not just these two, but these two had special access to his garage. These two had primary primary access. But it seems to me that the jury could conclude that this was a large drug trafficking experience in wholesale amounts of drugs, given the quantities among many different players. Your honor, my response to that is that there's nothing that ties it to this conspiracy, the conspiracy charge in this indictment. Certainly those words you're than my client and Santos, but I don't see where it's tied to this conspiracy. This is a specific conspiracy charge in this case. And all we've got is one guy who's a dealer and another guy who's a distributor or a middleman, who's probably a better, more accurate term, but nothing else that ties it into this conspiracy charge in this case. That's the essence of my argument. I see that I've gone over it and unless the court has other questions, I'll mute myself and come back for my one minute. Okay. Thank you, Mr. Cole. All right, Mr. Gentile, you have 10 minutes. Thank you. Good morning, your honors. May it please the court, Nathaniel Gentile on behalf of the government. The government's trial evidence included testimony from a drug expert, a cooperating defendant, law enforcement officers who participated in the investigation and voluminous recordings of phone conversations and text messages of the defendant and his co-conspirators. Based on this evidence, this court can confidently affirm the defendant's convictions. First, when considered together in the light most favorable to the government, drawing all inferences in our favor as this court must, this court should readily conclude that the jury had more than enough evidence to convict the defendant of the conspiracy count and the phone count. Second, based on the voluminous evidence before it, the jury properly rejected the defendant's buyer seller defense, the multiple conspiracy claim, and the arguments related to proof of the type of drug involved in the offense. Third, the record demonstrates that there was no evidentiary error, let alone plain error in the government's case to not involve any government misconduct. With respect to the sufficiency claim as to the conspiracy count, the government's evidence sufficiently proved the existence of the conspiracy. To begin, cooperating witness Abreu Baez testified to a large-scale operation in which he supplied kilogram quantities mostly of raw heroin at $55 per gram on credit to Larry Hall, who stored the heroin in a commercial garage next to his residence. This testimony was consistent with the government's drug expert who testified that wholesale quantities of heroin would go for approximately $50 to $60 a gram. In addition, the government introduced a ledger seized from Abreu Baez's residence, which Abreu Baez testified was a ledger which he kept track of the heroin that he provided to Larry Hall and the prices. The government also introduced wire intercepts that established that Larry Hall in turn worked with Pedro Santos to sell heroin to others, including Pedro Santos and Francisco Lopez. Wire evidence established that Santos' customers included Keith Jordan, who bought heroin at $58 to $65 a gram, again consistent with the expert's testimony. Officer Alan Wright testified that he conducted undercover purchases of heroin from excuse me 50 grams in one instance at $62 a gram and another instance 100 grams at $58 a gram, again consistent with the pricing set forth by the drug expert. In addition, and the undercover officer writes dealings with Keith Jordan when he was arranging for the hundreds. Mr. Jensen, what do we make of the fact though that these all of the evidence that you've detailed thus far relating to this being heroin shows connections to individuals that does not show a connection directly to Mr. Lopez? And so to the extent that Mr. Abreu Baez is talking about, you know, his use of heroin, is there there isn't an actually direct evidence that sort of links the evidence supporting heroin that this is heroin connecting it to Mr. Lopez, is there? There's no direct evidence, your honor, but the law doesn't require it. Circumstantial evidence is sufficient. And that's what this case rested on. But to your point about whether the evidence I was just describing is tied to Mr. Lopez, it is because Mr. Lopez used the words buck, as well as which is what Officer Wright used with Keith Jordan to refer to 100 grams of heroin. And the pricing for the December 28th transaction that Mr. Santos arranged was at 62, which is again consistent with the price that Officer Wright paid Keith Jordan for 58 grams of heroin and consistent with what the expert testified would be for wholesale quantities of heroin in terms of pricing. So although on one hand, it does establish the existence of the conspiracy in general, it also ties directly into Mr. Lopez because Mr. Lopez's recordings were consistent with that testimony as well. So with respect, let me follow up on Mr. Lopez's membership in the conspiracy. The evidence that the government submitted was also sufficient to prove that as well. The wire intercepts coupled with the expert's testimony as well as a brave bias testimony established out on December 9th and December 28th, Mr. Hall sold Mr. Lopez at least 150 grams of wire intercepts that he paid $62 a gram. With respect to the buyer-seller defense, your honors, again, when viewed in the light most favorable to the government, the trial evidence established that Mr. Lopez was a member of the conspiracy and not just a mere customer. The jury was properly instructed as to the buyer-seller defense. Defense counsel argued it at length in his closing argument, and the jury reasonably rejected it. Consideration of the various factors that this court has considered in prior precedent provided jury with reasonable basis to reject the buyer-seller defense. The quantities that Mr. Lopez purchased were redistribution quantities, and although quantity alone is not enough to establish membership in a conspiracy under the Brock decision, Lopez's membership in the conspiracy becomes apparent when analyzed against the additional factors that this court has outlined. There was mutual trust between Mr. Hall, Mr. Santos, and Lopez. There were offers of sales on credit. There was evidence about a long-standing relationship between Lopez, Santos, and Hall. And in addition, there was calls following the traffic stop of Mr. Santos and Mr. Lopez in which Mr. Lopez called Mr. Hall and expressed concern that he needs to clean up his shop, which is what he did. Turning to the sufficiency of the phone count, there was also abundant evidence that Mr. Lopez used the phone number intercepted on the wire tap. That phone was in his possession at the time of the traffic stop. TFO Cameron testified that he called that phone number at the scene of the traffic stop, and the phone in Lopez's possession rang. He also testified that he'd listened to a known exemplar of Mr. Lopez's voice, which the defense stipulated to, and that exemplar was the same as the user of the phone that was intercepted during the wire tap on multiple occasions. And again, with respect to the December 28th transaction, with all the evidence surrounding that, there was ample evidence to conclude that the transaction actually occurred. Turning to the multiple conspiracy claim, again, the jury was properly instructed on multiple conspiracies. Defense counsel argued it, and the jury reasonably rejected this claim. The law does not require that conspirators deal with each other or even know each other's identities. The jury had ample basis to find that Mr. Lopez joined the collective venture with the common goal of distributing controlled substances. And based on the evidence that I've just described, particularly when all inferences are drawn in our favor, the government proved the conspiracy charged. And again, with respect to the claim that there's no evidence to support that claim, I would appoint the court to the expert's testimony, Bray-Ubias' testimony, as well as the intercepts surrounding the transactions involving Mr. Lopez, where they talk about a buck or buck 50 at 6-2. And lastly, with respect to the remaining concerns, the government believes that they should be waived because they weren't sufficiently raised. However, they do not survive plain error review. So unless the court has any questions, I would just conclude briefly, Your Honors, that the government presented more than enough evidence to sustain the defendant's convictions on the conspiracy in the phone counts, and that there was no evidentiary error or misconduct that warrants reversal. Thank you, Your Honors. All right. Thank you, Mr. Gentile. Mr. Kopp, you've got a minute for rebuttal. Yeah, there you go. Thank you. I'll be brief, and I don't have much choice, do I? The counsel made a couple of references to these references to 150 bucks or whatever. Their own experts said that that's not drug-specific. That could be heroin, that could be cocaine, it could be money. So that doesn't tie this to heroin. On the buyer-seller exception, there was a reference to cleaning up. Well, if a seller thought maybe the authorities were onto them, him contacting the buyer and saying, hey, clean things up, that doesn't put them further out into a broader conspiracy. I think that's what buyers and sellers would do in that situation. I don't think that puts them to conspiracy. Just generally speaking, again, and I know I made this point before, they proved that Hall was a seller of heroin. They proved that Santos was a middleman of heroin, but also the government conceded that both of these men were dealing in at least cocaine, if not other drugs. And so I think what you've got here is it's not fair inference, it's guilt by association. Well, those guys did heroin, they did other things too. So this guy must be heroin too. I don't think that's proper. I think this court has reached that decision in other very similar cases. Thank you very much, your honors. I appreciate the time. All right. Thank you. Thank you both. We will reserve decision. That concludes our argument calendar. We've got two other cases on submission. Before we adjourn court, I just want to thank Ms. Court today and all week. I also want to thank the behind the scenes folks who make this really operate well on Zoom. It's a pleasure to be able to do this. And I'd rather be in person, but this wasn't half bad. So thank you all. Ms. Rodriguez, you may adjourn court. First bench adjourned. Thank you, judges. I'll transfer you now. Thank you. Thank you. Thank you. Thank you.